STATE OF NEBRASKA, APPELLEE, V. WARD W. HAYDEN, APPELLANT.
444 N.W.2d 317

Filed August 11, 1989.   No. 88-790.

Richard J. Epstein for appellant.

Robert M. Spire, Attorney General, and Vanessa R. Jones for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.
This is an appeal from the district court for Douglas County. Defendant, Ward W. Hayden, appeals his commitment to the

Lincoln Regional Center (Regional Center) in conjunction with his acquittal, by reason of insanity, of stabbing his ex-wife. The stabbing occurred on October 10, 1987.

On October 15, 1987, defendant was charged with second degree assault and use of a knife to commit a felony in violation of Neb. Rev. Stat. §§ 28-309 and 28-1205 (Reissue 1985). After a bench trial on March 16 and April 4, 1988, defendant was acquitted by reason of insanity. On April 5, defendant was ordered admitted to the Regional Center for a period not to exceed 90 days for the evaluation of his mental condition and for the preparation of a treatment plan pursuant to Neb. Rev. Stat. § 29-3701(4) (Reissue 1985). The district court further ordered that the evaluation and treatment plan be submitted to the court no later than June 24, 1988.

On July 8, 1988, defendant filed a motion to dismiss the commitment proceedings because the Regional Center had not submitted an evaluation and treatment plan to the court by June 24 and because the State failed to conduct an evidentiary hearing prior to the expiration of the 90-day evaluation period, in violation of Neb. Rev. Stat. § 29-3702 (Reissue 1985). During a hearing on July 14, the district court denied defendant's motion to dismiss and extended the evaluation period 60 days pursuant to defendant's § 29-3701(6) motion requesting a separate evaluation.

After an evidentiary hearing on August 18, 1988, the court ordered that defendant be committed to the Regional Center pursuant to the conditions set forth in the evaluation and individualized treatment plan (report) of Dr. Leonard Woytassek, dated June 23, 1988.

Defendant's motion for new trial was overruled. He timely appealed to this court, contending the district court erred in (1) failing to dismiss the commitment proceedings because the State and the Regional Center failed to meet the statutory time limits set forth in §§ 29-3701 and 29-3702, (2) allowing in evidence the report "containing hearsay" submitted by Dr. Woytassek, and (3) granting an unauthorized delegation of judicial authority to Dr. Woytassek to determine the conditions of defendant's confinement. Defendant further contends the State failed to prove by clear and convincing evidence that he

was dangerous to himself or others by reason of mental illness or would be dangerous in the foreseeable future as demonstrated by an overt act or threat. We affirm.

In his first assignment of error, defendant contends the commitment proceedings should have been dismissed because Dr. Woytassek's report was not received by the court "at least ten days prior to the expiration of the evaluation period" in violation of § 29-3701(5) and because he did not receive an evidentiary hearing "prior to the expiration of the evaluation period" provided for in § 29-3701.

The order directing that defendant be admitted to the Regional Center for purposes of evaluation was entered April 5, 1988. Under Neb. Rev. Stat. § 25-2221 (Reissue 1985), the 90-day evaluation period expired on July 5. During the July 14 hearing, the district judge noted that he and his staff had been on vacation from June 17 through July 4. When the mail was opened on July 5, the court found Dr. Woytassek's June 23 report and notified counsel that the evaluation had been received.

The district judge subsequently overruled defendant's motion to dismiss the commitment proceedings, but granted defendant's oral motion requesting an extension of time for additional evaluation by an expert of his own choice. The court then extended the original evaluation period an additional 60 days, pursuant to § 29-3701(6). The August 18 dispositional hearing was held more than 10 days prior to the expiration of the 60-day extension.

In conjunction with his first assignment of error, defendant claims the 90-day evaluation period should be analogized to his right to a speedy trial. In *State v. Steele*, 224 Neb. 476, 399 N.W.2d 267 (1987), this court noted that while the Nebraska speedy trial statutes, Neb. Rev. Stat. §§ 29-1205 et seq. (Reissue 1985), provide for the sanction of dismissal if the defendant is not tried within the 6-month statutory period, §§ 29-3701 and 29-3702 do not. We held in *State v. Steele* that the time limits set forth in §§ 29-3701 and 29-3702 were directory, not mandatory, and that dismissal of the proceedings was not a proper remedy for a nonprejudicial violation of §§ 29-3701 and 29-3702. As in *State v. Steele, supra,* we find that defendant was not

prejudiced by a failure to meet the statutory time limit, especially in light of his own motion to extend the evaluation period another 60 days. His first assignment of error is without merit.

In his second assignment of error, defendant contends the admission in evidence of Dr. Woytassek's June 23 report was improper because the report contained inadmissible hearsay in the form of "various hearsay notations by support personnel who were not qualified to testify as expert witnesses." Brief for appellant at 34. It is within the trial court's discretion to admit or exclude evidence, and such rulings will be upheld on appeal absent an abuse of discretion. *State v. Sutton*, 231 Neb. 30, 434 N.W.2d 689 (1989); *State v. McSwine*, 231 Neb. 886, 438 N.W.2d 778 (1989).

Section 29-3701(2) provides that the superintendent of the regional center or director of the facility to which the person has been committed for evaluation (in this case, Dr. Woytassek) is responsible for supervising the evaluation and the preparation of an individualized treatment plan. Section 29-3701(5) requires that the evaluation and treatment plan include the facts upon which conclusions stated therein are based. The statute also requires that the evaluation and treatment plan be submitted to the court. Section 29-3702 provides that a representative of the facility where the person was evaluated may testify as to the results of the evaluation and the contents of the treatment plan.

Neb. Evid. R. 703 (Neb. Rev. Stat. § 27-703 (Reissue 1985)) further provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

See, also, *Gibson v. City of Lincoln*, 221 Neb. 304, 376 N.W.2d 785 (1985); *Kraemer v. Mental Health Board of the State of Nebraska*, 199 Neb. 784, 261 N.W.2d 626 (1978).

At the August 18 hearing, Dr. Woytassek testified that he was a psychiatrist and director of the security unit at the Regional

Center. Defendant stipulated to Dr. Woytassek's credentials. Dr. Woytassek testified that he and other staff members performed psychiatric interviews and laboratory examinations of defendant, that written reports of the results of the examinations were provided to and reviewed by Dr. Woytassek, and that the results of the examinations were reflected in Dr. Woytassek's June 23 report to the court. As to defendant's prior medical background, Dr. Woytassek testified that he reviewed reports from the Veterans' Administration and a report by Dr. Bruce Gutnik. Dr. Woytassek also reviewed information contained in the police reports regarding this incident.

We conclude that the statements complained of were admitted as foundation for Dr. Woytassek's diagnosis and opinion that defendant was mentally ill and dangerous. Section 29-3701(5) specifically requires that evaluations and treatment plans submitted to the court "include the facts upon which conclusions stated therein are based." Under rule 703, these facts or data, if of a type reasonably relied upon by experts in the field in forming opinions upon the subject, need not be admissible in evidence. The district judge did not abuse his discretion in admitting the evaluation and treatment plan in evidence. Defendant's assertion to the contrary is without merit.

Defendant further contends that the court's order of August 19, 1988, reflects "an unauthorized delegation of judicial authority to Dr. L. E. Woytassek of the Lincoln Regional Center to determine the conditions of the appellant's confinement," in violation of Neb. Const. art. I, § 13. Brief for appellant at 33. He also contends the August 19 order fails to specify the conditions of confinement regarding defendant's freedom of movement outside the locked facilities of the Regional Center, contrary to the requirements of § 29-3702.

Section 29-3702 provides, in part:

The court shall specify the conditions of confinement regarding the person's freedom of movement outside locked facilities at the place of confinement, including whether or not the facility may grant the person leave into the community for any period of time, however short. The order of commitment specifying the conditions of

confinement shall include a finding by the court that any freedom of movement accorded the person outside a locked facility is consistent with the safety of the public.

The August 19 court order states in part as follows:

On August 18, 1988 an evidentiary hearing was held pursuant to Nebraska Revised Statutes 29-3702.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Ward W. Hayden shall be committed to the Lincoln Regional Center pursuant to the conditions set forth in the report dated June 23, 1988 by Doctor L. E. Woytassek of the Lincoln Regional Center. Said report will be marked as Exhibit 1 and incorporated by reference and the treatment proposed in said report is hereby approved by the Court.

The issue we have been asked to decide is, apparently, whether the court's incorporation by reference of the conditions of confinement set forth in Dr. Woytassek's report somehow denies defendant access to the district court. See, e.g., *Drennen v. Drennen*, 229 Neb. 204, 426 N.W.2d 252 (1988); *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988); *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980).

Unlike the situation in *Drennen v. Drennen, supra*, defendant has had access to the district court as trier of fact throughout these proceedings. We note that § 29-3701(4) provides that individualized treatment plans submitted to the court

shall contain a statement of the nature of the specific mental and physical problems and needs of the person, a statement of the least restrictive treatment conditions necessary to achieve the purposes of the plan, a statement of the least restrictive treatment conditions consistent with the safety of the public, and a description of intermediate and long-range treatment goals and a projected timetable for their attainment.

Accordingly, the treatment plan submitted by Dr. Woytassek contained the following proposed conditions of confinement:

LEAST RESTRICTIVE TREATMENT SETTING
The Security Unit of the Lincoln Regional Center is the

least restrictive treatment center setting necessary for Mr. Hayden's treatment needs and the safety of the public.

PRIVILEGES REQUESTED 1. Permission is requested to take Mr. Hayden to medical appointments in the community and to a local general hospital for medical treatment in the event such treatment becomes necessary. This would include both emergency and non-emergency treatments. During these outings he would be under the supervision of the Lincoln Regional Center staff.

. . . .

3. Permission is requested to take Mr. Hayden out of the unit for activities on the grounds with a staff/patient ratio of 1:1. We designate this a Code 1 status. No additional privileges are being requested.

Defendant had the opportunity to, and did, offer evidence contesting these proposed conditions at the August 18 hearing.

Defendant states in his brief that "[t]he June 23, 1988 report from Dr. Woytassek only requested certain privileges be granted the Appellant. By the District Court failing to respond properly to the request of Dr. Woytassekit [sic] has, in effect, allowed Dr. Woytassek to make a judicial decision which was the District Court's to make." Brief for appellant at 33. This argument is without merit. In its August 19 order incorporating the June 23 report, the district court found that the security unit of the Regional Center was the least restrictive treatment center setting necessary for defendant's treatment needs and the safety of the public. The court granted permission for defendant to leave the locked facility (1) to seek medical treatment under the supervision of Regional Center staff and (2) to perform activities on the grounds with a staff/patient ratio of 1 to 1.

We further note that a person committed pursuant to § 29-3702 has access to the court to seek review of the conditions of his confinement, pursuant to § 29-3703.

In his final assignment of error, defendant claims the State failed to prove by clear and convincing evidence that he was dangerous to himself or others by reason of mental illness or would be dangerous in the foreseeable future as demonstrated by an overt act or threat. The Supreme Court will not interfere on appeal with a final order of the district court in a mental

health commitment proceeding unless, as a matter of law, the order is not supported by clear and convincing proof. *State v. Steele*, 224 Neb. 476, 399 N.W.2d 267 (1987).

At the August 18 hearing, Dr. Woytassek testified that defendant suffered from "['] Axis I, Atypical Psychosis (principle diagnosis) (sic), 2. Cannabis Dependence, and 3. Alcohol Dependence; Axis II' . . . 'Personality Disorder, NOS, with antisocial, passive aggressive and unstable features.' " This diagnosis was based on the following information, which is contained in the June 23 report:

> [DR. WOYTASSEK]: The findings were that Mr. Hayden had "a history of psychotic episodes, one" of "which resulted in his being discharged from the military and one which occurred during" his "attack on his wife." It's also indicated [in the June 23 report] he lacked insight, his judgment was poor, and he tended "to minimize the importance of" the "attack on his wife. He has a history of hearing voices and" having "violent outbursts and has been previously diagnosed as . . . a schizophrenic, paranoid type . . . . He . . . has a long history of drug and alcohol abuse" and "[a] long history of violence . . . . He has failed to follow treatment and he denies that he has a drug or alcohol problem or that he is ill." Further, that he "is mentally ill . . . dangerous," and in need of a "period of treatment under close" observation "to develop . . . insight" into "his illness and control of his behavior."

Dr. Woytassek testified that defendant's alcohol and cannabis abuse tended to aggravate the conditions or behavior disorders but that defendant tended to deny that he had an alcohol problem, tended to deny that he abused cannabis, and tended to deny the importance of his assault of his ex-wife. Dr. Woytassek testified that defendant did not recognize the severity of the attack on his ex-wife. Dr. Woytassek also testified that he considered defendant to be "presently dangerous."

On cross-examination, Dr. Woytassek admitted that during the time defendant was in the Regional Center security unit, defendant had not suffered from hallucinations or delusions and was oriented to time, place, and person. He was not

depressed, was able to carry on rational conversations, was not a behavioral problem, and had responded to treatment.

Regarding the stabbing of defendant's ex-wife in October 1987, Dr. Woytassek testified that this incident would be only indirectly relevant to defendant's present status "because Mr. Hayden has been locked up for some of that period of time and he doesn't have access to substances, so I feel that that is an important issue to assess, his dangerousness." Dr. Woytassek also agreed that it would be a relevant factor in assessing dangerousness if a person was not confined and did not commit dangerous acts.

Dr. Woytassek was not aware that defendant had not been confined from November 6, 1987, through April 4, 1988.

Dr. Bruce Gutnik, a psychiatrist, testified that he performed a psychiatric examination of defendant on August 3, 1988. During a previous examination on March 23, 1988, Dr. Gutnik determined that defendant suffered from paranoid schizophrenia. Dr. Gutnik noted that between March 23 and August 3, defendant had been doing well without the use of any antipsychotic medication. The significance of this fact was that "one of two things is occurring: either his diagnosis would more appropriately have been schizophreniform psychosis back on March 23rd . . . or his diagnosis perhaps was schizophrenia, and he now is in remission . . ." A third possibility was that defendant suffered from atypical psychosis. Dr. Gutnik testified that defendant's condition had improved since March 1988 and that "[a]t the present time I found no signs of psychosis." Dr. Gutnik was of the opinion, based on his August 3 examination, that defendant did not suffer from atypical psychosis at that time, was not presently dangerous, and did not need to be hospitalized as an inpatient at the Regional Center.

Dr. Gutnik testified, however, that defendant "certainly is going to need to be monitored closely. He has several episodes in his history of having become psychotic . . . ." Dr. Gutnik suggested that defendant pursue "an outpatient-type commitment treatment program where someone can follow him on a close basis" and agreed that defendant needed to stay away from alcohol and drugs. Dr. Gutnik also agreed that defendant could become dangerous if he used alcohol and

drugs.

Defendant testified that from November 6, 1987, through April 4, 1988, he lived at his parents' home, within 1 mile of his ex-wife, but performed no further acts against her. He testified that during this time he had access to an automobile, worked as a nurse's aide, and attended classes at Bellevue College. Defendant admitted that he had a problem with alcohol and marijuana, but stated that he did not commit any violent acts, drink, or use drugs during this period and intended to seek outpatient treatment for his drug and alcohol problems.

Section 29-3702 provides that the court may enter an order of commitment if the court determines there is clear and convincing evidence that the person is dangerous to himself or others by reason of mental illness or defect, or will be so dangerous in the foreseeable future, as demonstrated by an overt act or threat.

At the August 18 hearing, both psychiatrists testified regarding their diagnoses of defendant's psychiatric disorders. Dr. Woytassek was of the opinion that defendant suffered from atypical psychosis. Dr. Gutnik testified that defendant possibly suffered from a type of schizophrenia, schizophreniform psychosis, or atypical psychosis. Although defendant contends that Dr. Woytassek's diagnosis was "seriously flawed," the court, as the trier of fact, was not required to take the opinion of either expert as binding. See *State v. Mayfield*, 212 Neb. 724, 325 N.W.2d 162 (1982). The record contains clear and convincing evidence that defendant has some form of mental illness.

The most recent overt act demonstrating defendant's dangerousness to others occurred on October 10, 1987, when defendant stabbed his ex-wife. Defendant contends this incident was too remote to be probative of his dangerousness to others.

In appeals from proceedings under the Nebraska Mental Health Commitment Act, we have stated:

"In determining whether a person is dangerous, the focus must be on the subject's condition at the time of the hearing. Actions and statements of a person alleged to be mentally ill and dangerous which occur prior to the

hearing are probative of the subject's present mental condition. 'But a mere recitation of past acts, in the absence of a showing that such clearly forms the foundation for a prediction of future dangerousness, cannot serve as the basis for a finding that one is a mentally ill person . . . .' . . .

In order for a past act to have any evidentiary value it must form some foundation for a prediction of future dangerousness and be therefore probative of that issue."

*In re Interest of McDonell*, 229 Neb. 496, 499, 427 N.W.2d 779, 781 (1988) (quoting *In re Interest of Blythman*, 208 Neb. 51, 302 N.W.2d 666 (1981)). This court also has stated that in determining whether an act is sufficiently recent to be probative of dangerousness, "[e]ach case must be decided on the basis of the surrounding facts and circumstances." *Hill v. County Board of Mental Health*, 203 Neb. 610, 615-16, 279 N.W.2d 838, 840-41 (1979).

In the case at bar, defendant kicked in the door of his ex-wife's home and assaulted her violently, both physically and verbally, in the presence of two of their children. He eventually stabbed her with a knife, causing a deep laceration in the buttock and rear of the upper thigh. She also suffered a defensive wound to the hand. Defendant and his ex-wife had been divorced in August 1987. During the time of the divorce, defendant had verbally and physically assaulted his ex-wife several times and had destroyed some of her property. There is clear and convincing evidence that defendant suffers from some form of mental illness. There also is evidence that defendant has a history of cannabis and alcohol abuse, that he lacks control and insight over these problems, and that he tends to become violent after using these substances. Drs. Woytassek and Gutnik both testified that defendant should be closely monitored and needs treatment with respect to his abuse of drugs and alcohol. Defendant has a history of psychotic episodes.

Under the circumstances of this case, we cannot say, as a matter of law, that the October 1987 stabbing incident was too remote to be probative of defendant's dangerousness to others. We determine that the order of the district court is supported by

clear and convincing proof.

The judgment of the district court is affirmed.

AFFIRMED.